And I think it's time for us to turn to the first case. So we have case number 20-3104CV, Marano v. The Metropolitan Museum of Art. We have Mr. Freeman here for the appellant. Is that correct, Mr. Freeman? Are you present? Yes, your honor. Good morning. Great. And we can hear you. We can hear you. I can hear you well. I understand you would like to, well, we've allocated 10 minutes and you've asked to set aside two minutes for rebuttal. Is that right? That's correct, your honor. Very good. If you'd love to proceed, please go ahead. Yes. Good morning, your honors. May it please the court, James Freeman of Leibowitz Law Firm on behalf of the plaintiff appellant, Lawrence Marano. Thank you for the opportunity to appear today. The issue on this appeal is whether the Met's affirmative defense of fair use under section 107 of the Copyright Act is conclusively established on the face of the pleadings with respect to the Met's unauthorized use of plaintiff's photograph of Eddie Van Halen as part of a museum exhibition entitled Play It Loud, which ran from April through October of 2019. Plaintiff respectfully averves that he has stated a plausible claim for copyright infringement and that the district court prematurely resolved the affirmative defense because there are material questions of fact and dispute regarding the degree to which the Met transformed the photo, the commercial nature of the exploitation, whether the Met acted in bad faith by failing to credit the plaintiff and whether the Met impaired the actual market for the photo by failing to license it. Now, although the fair use doctrine was codified in section 107, the defense existed in common law prior to 1976 and according to the Supreme Court, the doctrine remains, quote, an equitable rule of reason, end quote. So from an equitable standpoint, the question is, is it more fair that a prestigious museum such as the Met compensate and credit the photographer whose work is curated for display in public exhibitions or should the museum enjoy unfettered access to exploit historically significant photographs without any compensation or credit to the photographer? Plaintiff submits that while all members of society can appreciate the important function that museums provide, the Met is not an arm of the state like a public university and should not be accorded an unfettered right to display wholesale reproductions of photographs under the color of scholarship without first obtaining permission from the photographer. So Mr. Freeman, can I ask you to come back to, I think, how you initially laid out your theme of oral argument, which is that there are outstanding factual disputes. Yes, your honor. Well, in particular, in particular, could I focus your attention on the question of the transformative nature of the display of this photograph? Could you explain to me two things? One, why in your view this is a factual question? And number two, what is the authority, meaning a case, for the proposition that transformative use is a question of fact? Yes, your honor. Thank you. So the issue of transformativeness is actually two-pronged. It's the purpose and the character. Now, with respect to the purpose, the Met has argued that they transform the purpose of the photograph because they use it in the context of scholarship in a museum exhibition, whereas it was originally intended to, you know, as a rock and roll photo, was not intended to be in a museum. And to that extent, they're correct. They have somewhat transformed the issue. However, that doesn't end the analysis. We still have to ask, have they altered the meaning or expression behind the photograph itself? So there's at least four cases I can cite where, on rule 12, where the court determined that it was not sufficiently transformative to determine as a matter of law. The one case Coleman v. HBO cited in our brief talks about the use of a painting in a documentary film about a crime saga. And Judge Brody said at the rule 12 stage, it is plausible that defendants use the work in the film solely as an illustrative aid depicting the subjects of the film. This use would not be transformative. Similarly, in Ferdman v. CBS, this was a case regarding Tom Holland, the actor who played Spider-Man. He posted an image of himself to his Instagram, and then CBS Interactive republished the report on its website. The court found, Judge Gardefee, that the use was somewhat transformative, but it wasn't transformative as a matter of law. So it created a question of fact. And here what we're saying is, the object of the scholarship of this exhibition is not the photograph. The object of the exhibition is the guitar. So what have they really done to transform the image itself? They're just using the image as an illustrative device to educate, you know, to show what the guitar, the meaning of the guitar. But the guitar is not the copyrighted work at issue in this litigation. So... But the guitar is the critical focus, right, of the exhibition. Yes. And the musical instruments, the other musical instruments as well. It's not the, it's not Van Halen. It's the guitar. And the picture, and I think your client has even said this at one point, the purpose of the picture was to capture Van Halen in concert, which is very different from showing the guitar itself being operated by Van Halen. I mean, the purpose of the exhibition, the purpose of the photograph differs from the purpose of the photograph being used in the exhibition. Would you agree with that? Well, we agree to the extent that they have transformed the purpose by putting it into the context of the museum, but they haven't altered the meaning, message, or expression of the photograph. Well, they have in one sense, because the whole focus of the particular exhibition, and particularly this particular Frankenstein guitar, is the guitar itself. The fact that it was cobbled together by various, by Van Halen from various other guitars, that it's a unique instrument. And so that's the focus, as opposed to the artistry of Van Halen, which was the, and the appearance of Van Halen in concert, which was, I think, the purpose of your client's picture. You know, well, our response to that would be to cite the case of Sohoyo's First National Examiner, which involved the secondary use of a photograph of a vintage Cadillac. In that case, Judge Martin, this dates back to 98, found that the use was not transformative because they were using the photo to show what it depicts, which is essentially here, they're using the photograph of Van Halen to show Van Halen playing the guitar. Now, the district court there found that, quote, the case would be different if the examiner's use were for the purpose of commenting on Sohoyo's photography. But the article is about art cars, not photography. And the examiner was simply using the Sohoyo's photo to save itself the expense of obtaining its own photo. So the point that we're making here is that because the commentary, the scholarship, as it were, is not specifically directed to the photograph, Exhibit B to the complaint shows that there's no information whatsoever about the photograph at all. They have not staged the exhibition with the idea of educating the public about the copyrighted work at issue. Rather, they're using the photograph as a reference point. And what we're saying is, OK, well, that might be somewhat transformative. But is it so transformative as a matter of law that no reasonable jury can conclude that this was that this was actually used as an illustrative device to basically place things into context as a reference point rather than it's serving as the object of scholarship? I also wanted to address quickly. I only have 30 seconds left. You know, the idea of this not being a commercial venture. I mean, the the Met started charging mandatory admission back in twenty eighteen and they generated, according to public records, somewhere on the on the about fifty five million dollars at the box office that year. I don't think that this case should be compared to cases that involve, for example, public universities. I'm sorry. Do they charge for access to the website? They do not charge access to the website. However, that what your complaint alleged? Well, no, we didn't know the complaint doesn't allege that they charge access. No, no. I'm sorry. I misstated that. I thought your your complaint was complaining about the placement on the website. The complaint alleges about the the placement of it on the website, but the website is using the photograph in some sense as a commercial advertisement for the physical exhibition because they're inviting the Web user to come to the website, view the, you know, the photograph and the guitar and then say, OK, now buy your tickets or make your donation. So what we're saying is that because they're using the photograph as a promotional device, as opposed to the object of scholarship itself on the website, that that that that implicates at the very least a plausible inference of commerciality. Again, this is rule twelve. We only need to establish plausibility at the third sub factor. Well, actually, Mr. Mr. Freeman, if I could pause you right there, you've reserved two minutes for rebuttal. We've already kept you a little bit and we won't count any of that towards your two minutes. Now, if you'd like, you may use some of your two minutes now or you may hold them in reserve. What's your pleasure? I prefer to hold them in reserve, your honor. Thank you. OK, we'll come back to you. Thank you very much, Mr. Freeman. Thank you. Now we have, I believe, is it Miss Steinman? Are you present? Yes, your honor. Good morning. I can hear you and I can see you. Very good. So you have 10 minutes. And why don't we hear from you for the Met? Sure. May it please the court. My name is Linda Steinman and I'm representing the Metropolitan Museum of Art. Your honors, this is actually a classic transformative use, very similar to the use in the D.K. case, similar to the use blessed as fair used by the Ninth Circuit in the Sofra case and similar to the use blessed by the Fourth Circuit in the Bouchot versus Baltimore Ravens cases. In all of those cases, a photograph or a poster or some other copyrighted work was used as historical artifact. In this case, Mr. Morano explicitly admitted in his papers below that the purpose of the original photograph was to depict Van Halen in concert. It was a classic celebrity photograph of a musician in concert. In sharp contrast, it is evident on the face of the online exhibition catalog that the Metropolitan Museum is using the photograph as a historical artifact, as a demonstration of the guitar in action. And then they provide a great deal of commentary about the guitar. They talk about how it was constructed, how Van Halen was a very innovative musician and this was a very innovative guitar. It combined the elements of various other guitars. It became a famous guitar that spawned many copies. And so the photograph is used not in its expressive fashion as a concert photo, but in a factual historical fashion as an artifact of what actually occurred, you know, in a very similar fashion as the D.K. case. We don't need discovery here. It's evident, as I said below, Mr. Morano explicitly admitted what the purpose of his photograph is and the Metropolitan Museum's online exhibition catalog is very obvious on the face of that catalog what the museum was doing. And so this is a case that is perfectly ripe to be dismissed on a motion to dismiss. Mr. Morano relies very heavily on cases involving news photographs. Most of the cases he has cited are news photograph cases and in those cases they emphasize again and again that the reason why those cases do not find fair use is because the photograph was being used for the exact same purpose as the original. They were news photographs. They were being used in news websites or newspapers to write stories about a newsworthy purpose. That they were being used for the exact same purpose as the original. They were being used in a commercial fashion and of course in those all of those cases it makes perfect sense that the court would find that's not fair use. The court would find that if you allow that type of thing a news journalist couldn't earn a living. But those cases even those cases make clear that Otto versus Hearst is a perfect example cited by Mr. Morano. Those cases say to be clear commentary is not necessary to the fair use defense only that the secondary use provide new expression meaning or message to the original and that's exactly what has happened here. The Met has in fact provided a new message meaning you know to the original by focusing on the guitar. Ms. Steinman the other side makes the point that this photograph is not commented on by the Met. It's not the photograph itself is not it not a subject of scholarship and what is your response to that? Yes well you know both the DK case in the DK case there was also in several instances no commentary on the posters being used in the autobiography of the Grateful Dead and the Second Circuit said it does not need to be commentary about the artistic you know poster as long as the poster here is serving a different purpose. It's just showing that this concert happened. Likewise in the Carrie case the Second Circuit said there does not need to be commentary on the original. The fair use doctrine is a doctrine that has no bright line rule the Supreme Court tells us in through one fashion or another the user is adding something adding some new expression to some new meaning in its use then that's considered a transformative use. What's your response to his claim that there is a commercial aspect to this because the Met along with the membership and and the requested amounts of payment for going for attending the Met and that kind of thing? Under the case law this is clearly not a commercial use. Is that simply the fact that the Met is a not-for-profit? A couple of things one the Met is a not-for-profit of course but critically the Met did not charge for this the online exhibition catalog is available for free to anyone to see and the cases say in order for a work to be a commercial work there has to be a very direct nexus you have to be trying to profit from the sale of that work there has to be a very close connection between you know the the use and the money if you will the charge the hypothetical notion that some people who go online and see something for free might be interested in going to see the exhibition is far too tenuous a connection for a work to be considered commercial. Again another perfect example is the Fourth Circuit's decision in the Baltimore Ravens case they had an exhibition in the lobby about the history of the Baltimore Ravens. I'm sure you know in a general sense that was to promote the Ravens but the court the Fourth Circuit said that was not a commercial use anybody could walk into the lobby and see the exhibition it was not there was no charge to see the exhibition here likewise there was no charge to see the online exhibition catalog. Kinkin your point is that the focus here is on the should be on the website as opposed to the yes your honor because that's what the claim is the only claim in the complaint is is the use in the free online exhibition catalog which was an exhibition catalog of the 185 instruments on display you know in the exhibition it was a you know a very detailed scholarly publication we haven't discussed the scholarly prong yet today but that's also an important prong in the analysis that this was a scholarly work. Ms. Simon could you address the question that I asked opposing counsel which is in your view at what level are we determining something is a factual question so I understand that sort of the brute facts here are not contested you know where did the photo appear on which website all that sort of thing but I think opposing counsel suggests that the questions of purpose and transformativeness are also questions of fact what's your view on that? I don't believe in this instance there are questions of fact Mr. Murano admitted explicitly in his papers what his purpose was and the Metropolitan Museum's purpose in creating this online exhibition catalog is completely obvious on its face. The only instance in which Mr. Murano has tried to raise a factual issue is he has alleged that by mistakenly not having a photo credit to the photographer that that was a bad fate. I have two things to say about that first of all that argument was waived it was never raised in the complaint it was never raised in his four briefs below the Second Circuit has long held that if you don't raise an argument below it's waived and here even more importantly the Second Circuit has held that bad faith really only comes into the fair use context when you have the facts of the nation case when a man when when a work has been purloined and there's an attempt to scoop and the NXIVM case and the Swatch case both Second Circuit cases make very clear that other than in that context the good or bad faith is is not a significant factor at all in the analysis it just doesn't play a significant role what is it what about what about the fact of transformativeness is that a question of fact no on this on this set of facts uh it is not you could hypothetically have some uh cases where uh you know the the uh that you might need to have a factual discovery but not in this case again because Mr. Murano has explicitly admitted the purpose of the of the NXIVM case was to take a concert photo of Van Halen and all you need to do is look at the Metropolitan Museum's online exhibition catalog and their purpose in using it is is evident there's no there's no inquiry needed it's very plain on the face of it that this was you know the text is there and the 185 other objects are there and the introduction to the catalog everything is on the face of the document uh and it's important frankly uh that uh motions to dismiss be granted the purpose of the Copyright Act ultimately is to um advance science and the arts and there's a tremendous chilling effect if uh cases like this are dismissed from the start discovery is enormously expensive and uh there is a significant chilling effect to museums and book publishers and others if if cases like this are not dismissed at the motion to dismiss stage. Thank you Ms. Simon unless either of the uh other members of the panel have any other questions in that case I'll thank you for your argument and Mr. Freeman you reserved two minutes for rebuttal so I'll ask Maria to please set up the two-minute counter on the clock. Yeah could you please unmute your music hello can you hear me yes thank you okay so with respect to the commercial use in the opposition brief in the court below the defendant admitted as this is at AA-5455 that they used a photograph quote to inform the public that the actual Frankenstein guitar was available for viewing in the museum as part of the exhibition end quote that exhibition is not free your honors with respect to the Bill Graham's archive case which the district court relied on that case first of all it's not a museum case number two in that case the thrust of it was not that that they were using the images as historical artifacts rather it was that they were using the photographs as tiny thumbnail images that didn't take up more than one-eighth of the page they were in a collage format there was aesthetic alteration in other words to the photo and the image constituted an inconsequential portion here exhibit b to the complaint which is which should be the controlling exhibit shows quite clearly that the photograph is used in scale it's full color it's not a thumbnail it's not in a collage it's a literal wholesale reproduction moreover there is actually a federal case involving a museum and we've cited that in our brief it's called Rothenberg versus the Museum of Fine Arts Houston that case was a rule 12 the the Museum of Fine Arts Houston may filed a rule 12 motion on the exact same grounds that defendant did here and in that case the district court southern district of texas denied the rule 12 motion and said that he wanted a developed factual record particularly with respect to the fourth factor which is the market harm that was caused and what ended up happening was the district court ordered the parties to submit letters regarding what would be the scope of discovery and ultimately the district court approved uh discovery with respect to the policies and practices of the photographic content and also to see were they licensing other photographs for purposes online so we respectfully submit that although that case is not binding at the very least it's analogous to the present case whereas bill of bill graham archives is not factually analogous to the present decision with respect to the waiver argument respectfully the opposing counsel is incorrect about that uh the prevailing rule of law and this is the vintero case which is cited in our brief that if there's no questions of of of material fact that there's no dispute with respect to the fact uh at the court below then the appellant's counsel is free to raise novel questions of law because it's just a matter of applying the law to uncontested facts so there is no waiver there is bad faith here there was no credit whatsoever given to the photographer which is i mean considering this is a museum which is the whole point they're saying is for scholarship the fact that they didn't even inform the public of who the photograph was uh who took the photograph when it was taken uh you know what significance it might have what year it was taken it was just as the district court said it was just an afterthought and what we've said is how can fair use really be used um to you know use a photograph for incidental purposes the whole purpose of fair use is to preserve the first amendment right to communicate a message if just using the photo as as the incidental use that doesn't seem to fall in line with the whole purpose of the fair use doctrine the campbell case makes clear that the photograph that that the original work has to be essential to the communicative message of the secondary work here they could have chosen any photograph they chose to exploit this specific creative expression plaintiff's pictorial rendition of van halen is what the met curated they could have used any other photograph so the photograph in a sense was fungible and we don't believe that i think we have your argument and again unless uh judge walker judge sinatra have any further questions um i think we're going to take the case under advisement so um let me thank both council the very helpful arguments we very much appreciate it and i think we will now turn to the